IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Criminal Case No. 13-cr-00477-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    JEROLD R. SORENSEN,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Petition of Jerold Sorensen for Writ of Coram Nobis Vacating Conviction (the "Petition") (ECF No. 154). The Court has reviewed the Petition, the Response (ECF No. 157) filed by the government, Defendant's Reply (ECF No. 158), and additional Briefs (ECF Nos. 161 and 162) filed by each of the parties. Additionally, the Court held a hearing to consider argument on the Writ (ECF No. 160). Being fully advised by these matters, the Court GRANTS in part and DENIES in part the Petition.

In late November 2013, Jerold Sorensen ("Defendant") was indicted for violation of 26 U.S.C. § 7212(a) (corrupt endeavor to obstruct of impede due administration of the internal revenue laws)[1] and for violation of 18 U.S.C. § 1503 (obstruction of justice). For reasons not

---

[1] The obstructive conduct charged included a variety of activities disguising and under-reporting Defendant's income. These acts occurred from 2002 through May 2008 and included establishing pure trust organizations ("PTOs") to acquire and hold his assets and to receive payments from Defendant for use of the assets (thereby generating purported business deductions for Defendant's benefit). He also directed tenants of his properties to make rental payments to the PTOs. Working with an attorney (Melissa Sugar), he used an unincorporated business entity ("UBO") to open a bank account and receive deposits from the PTOs, thereby distancing himself and his social security number from various received

pertinent to the issue before the Court, the 1503 or obstruction of justice count was dismissed (ECF Nos. 84 and 86) by the government, and Defendant went to trial before a jury solely on the 7212 count. The jury found Defendant to be guilty. (ECF No. 100). Defendant was sentenced by the Court to 18 months imprisonment, one year supervised release, a $100,000 fine, and a special assessment of $100.00.

Defendant appealed his conviction to the Tenth Circuit Court of Appeals. There, one challenge to the conviction was that the evidence was insufficient to prove 7212(a) obstruction. Instead, Defendant argued, the evidence established only a distinct, separate, and uncharged crime of tax evasion. That argument relied on a Supreme Court analysis of a different obstruction statute in *United States v. Aguilar*, 515 U.S. 593 (1995) and a Sixth Circuit opinion in *United States v. Kassouf*, 144 F.3d 952 (6th Cir. 1998). The Tenth Circuit rejected this and other arguments and affirmed Defendant's conviction. *United States v. Sorensen*, 801 F.3d 1217 (10th Cir. 2015). Finding no requirement that there be an ongoing audit or proceeding to which the obstruction was directed, the Tenth Circuit disagreed with *Kassouf* and found *Aguilar* inapplicable.

Defendant thereafter filed a petition for certiorari with the Supreme Court - again arguing that Defendant could not be convicted where his obstructive conduct was not tied to an active IRS investigation. The Supreme Court denied the petition - seemingly ending the dispute as to the propriety of the conviction. *Sorensen v. United States*, 136 S.Ct. 1163 (2016). But the "end" of the dispute did not last.

---

funds. But he was listed as an "administrative assistant" for the UBO, and identified the attorney as "trustee" - giving her signatory authority over the account. Through the attorney, Defendant controlled the account and conducted various business transactions for his personal benefit.

2

In 2018, the Supreme Court issued its opinion in *Marinello v. United States*, 138 S.Ct. 1101 (2018). The Supreme Court contracted the scope of § 7212(a) holding that "the Government must show (among other things) that there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." 138 S.Ct. at 1109. Further, the Supreme Court required that "[i]n addition to satisfying the nexus requirement, the Government must show that the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant.... It is not enough for the Government to claim that the defendant knew the IRS may catch on to his unlawful scheme eventually." *Id*.

There was a dissent in *Marinello* authored by Justice Thomas in which Justice Alito joined. As if the opinion of the Court had not sufficiently placed a bullseye on Defendant's conviction, the dissent criticized the potential impact of the opinion, noting that there had been numerous similar cases to the one before the Court where the government had prosecuted obstruction under the omnibus clause of § 7212(a) - identifying "e.g., *United States v. Sorensen*, 801 F.3d 1217, 1221-1222 (C.A. 10 2015)(defendant hid taxable income in elaborate system of trusts)...." 138 S.Ct. at 1117.

About one month later, Defendant filed the Petition.

There is no doubt that a petition for writ of error coram nobis is the proper vehicle to collaterally attack a conviction for one - such as Defendant - who has completed his custodial sentence and thus cannot avail himself of habeas relief. *United States v. Morgan*, 346 U.S. 502 (1954); *Chaidez v. United States*, 568 U.S. 342 (2013). The government does not contend otherwise.

The Tenth Circuit has held that a writ of coram nobis is available "only to 'correct errors that result in a complete miscarriage of justice.'" *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989)(quoting *United States v. Williamson*, 806 F.2d 216, 222 (10th Cir. 1986)). Other circuits use a three part test which requires (1) a showing as to why earlier relief was not sought, (2) significant collateral consequences flowing from the challenged conviction, and (3) an error of the most fundamental character. *See, e.g., United States v. George*, 676 F.3d 249, 254 (1st Cir. 2012). These additional requirements do not appear to have been addressed by the Tenth Circuit. Nonetheless, I find them applicable so that the availability of the extraordinary relief remains limited.

There is no doubt that Defendant diligently pursued relief in this case. He appealed the central issue in the Petition to the Tenth Circuit, sought *en banc* review, and filed a petition for certiorari with the Supreme Court. He filed the Petition within a month of *Marinello*. And in terms of significant collateral consequences, Defendant has submitted an unchallenged affidavit (ECF No. 154-6) identifying the loss of Second Amendment rights due solely to this conviction as well as a financial impact on his profession (dentist/oral surgeon) as some insurers have declined to cover his procedures based on the felony conviction. The deciding issue, therefore, is whether there has been fundamental error resulting in a miscarriage of justice in this case.[2]

From Defendant's perspective, the question has but one answer - allowing the conviction to stand is a fundamental miscarriage of justice. Defendant was indicted, tried and convicted on

---

[2]There are some preliminary matters discussed by the parties which do not appear to be meaningful matters of dispute. Defendant argues that *Marinello* governs because "[n]ew *substantive* rules generally apply retroactively" and thus can be relied upon by him on collateral review. (ECF No. 154 at 7)(quoting *Schriro v. Summerlin*, 542 U.S. 384, 351 (2004). The government essentially concedes that *Marinello* announces a new rule of substantive law (ECF No. 157 at 7-9), and the Court so finds.

a legal theory that does not constitute a violation of § 7212(a). According to Defendant, he has pursued relief at every available legal opportunity. And, his view is that if coram nobis relief is to be available in any cases, it should be available to him.

The government's position is more nuanced and layered, but it ultimately is that there is not a miscarriage of justice involved in the present case. According to the government, the Supreme Court in *Marinello* did not find § 7212(a) to be unconstitutional. Rather, the Supreme Court interpreted the statute in a manner which simply required additional/different jury instructions at trial. As for the indictment, it satisfied notice pleading by its reference to § 7212(a). Defendant was not factually innocent as his actual conduct surely violated 26 U.S.C. § 7201 (tax evasion). And most importantly, there was evidence at trial that by some point in 2007 or clearly by 2008, Defendant became aware that the IRS was investigating Ms. Sugar and eventually Defendant.[3]

After careful consideration of this matter, the Court disagrees with the government's justifications for denying the Petition. While it is true that the Supreme Court did not invalidate § 7212(a), it did not simply redefine the meaning of a word or phrase and do little more than functionally craft a new jury instruction. It dramatically limited the scope of § 7212 prosecutions and invalidated an entire theory of prosecution - the very theory used in this case. As for notice, the Court would be hard pressed to say that the indictment contained adequate notice of *Marinello's* investigation and nexus requirements given (i) the lack of mention of any reference to either in a lengthy, speaking indictment and (ii) the persistent denial of the necessity of any

---

[3]The trial evidence showed that in the 2008 time frame, Defendant learned that the IRS had executed a search warrant on Ms. Sugar's offices in connection to her UBOs. (ECF No. 107 at 129.) He also learned in 2008 that he was under investigation. (ECF No. 107 at 122.)

such element, at the time, by the government, this Court and the Tenth Circuit. As for "factual innocence," the Court will not mentally construct charges that could have been, but were not, filed. Rather, it focuses on what was charged and how the matter was prosecuted. This leads to the government's final contention - that the jury could have found the *Marinello* requirements based on the evidence presented.

Acceptance of this proposition would require a swapping of the Court's robes for coveralls and an extremely large pail of spackle. The evidence referred to was presented in order to show awareness of the wrongfulness of conduct spanning more than a half decade. It was not presented or argued to show that Defendant's conduct, which began years and years before, was directed against or even related to the late stage investigation. While it is "possible" that a jury could have ignored the temporal anomalies, the bulk of the indictment's allegations, the arguments of counsel and instructions of the Court and both "found" the necessary nexus and based a verdict thereon, it is not possible that any reasonable jury would have, could have or did do so. Simply put, for the Court to deny on this basis would require the Court mentally to retry the Defendant on different theories, evidentiary inferences and arguments. Any such invitation is declined.

The situation presented here is most analogous to the situation existing in the aftermath of the Supreme Court's decision in *McNally v. United States*, 483 U.S., 350 (1982) ("McNally") where the Supreme Court invalidated a theory of prosecution by which the mail fraud statute was presented as proscribing schemes to defraud citizens of the intangible right to honest and impartial government. Thereafter, collateral challenges (albeit under § 2255) were raised to prior convictions. And the Tenth Circuit upheld the challenges. *United States v. Shelton*, 848 F.2d

1485 (10th Cir. 1998) ("*Shelton*"); *United States v. Lance*, 848 F.2d 1497 (10th Cir. 1988)(*en banc*) ("*Lance*").

In *Shelton*, the Circuit, citing *McNally*, invalidated a conviction because the instructions on mail fraud "permitted a conviction for conduct not within the reach of § 1341." (*Shelton,* at 1496.) And in *Lance*, the Circuit invalidated because "either the indictment failed to charge a crime or the jury instructions and evidence permitted Lance to be convicted on the basis of conduct that is not a crime." *Lance*, at 1502.

While the Court does not interrupt either decision's reference to convictions "permitted" on the basis on conduct not covered by the operative statute to be suggestive of a standard which suggests that *coram nobis* should be granted on the mere possibility of any error, the Circuit's language does provide substantial counterweight to the implicit suggestion of the government that the proper focus of this Court should be on the search for possibilities which might create a theoretical consistency between the conviction and the post *Marinello* limits of § 7212(a). By all fair measures of evaluation, Defendant was convicted in the opinion of this Court on the basis of a theory which will not support that conviction in light of *Marinello*. Accordingly, the Petition will be granted and the conviction invalidated.

There is, however, one additional matter. The Petition seeks return of the fine paid by Defendant. (*See* ECF No. 154 at 10.) Here, Defendant's entire sentence has been served and/or completed. But the Court has no power to restore lost liberty or supervision time. And the Court does not find that the loss of that fine amount is related to the collateral consequences which the Court has sought to correct in this matter. Nor does the Court find a fundamental error or miscarriage of justice to allow to stand a fine long since passed into the general funds of the

United States on the basis of a conviction which was valid under the law of this Court and the Tenth Circuit at the time it was imposed and paid.  And this is even more the case where, as here, the Supreme Court denied certiorari on the very issue which ultimately caused the conviction itself to need to be vacated.

Accordingly, on the basis of the foregoing:

IT IS ORDERED:

That Defendant's conviction in this matter is declared invalid and vacated, and

That the Petition (ECF No. 154) is GRANTED IN PART and DENIED in part as stated above.

DATED this 1st day of July, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge